IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GOVINDASWAMY NAGARAJAN )
 )
v. ) No. 3:16-0495
 )
TENNESSEE STATE UNIVERSITY )

**To: The Honorable Denise P. Hood, Visiting Chief District Judge**

# R E P O R T  A N D  R E C O M M E N D A T I O N

Currently pending is Defendant's motion for summary judgment (*see* Docket Entry ("DE") 69), to which Plaintiff has filed a response. *See* DE 73. Defendant has also filed a subsequent reply to Plaintiff's response. *See* DE 77. This matter was referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. *See* DE 4.

For the reasons that follow, the undersigned Magistrate Judge respectfully recommends that Defendant's motion (DE 69) be GRANTED IN PART and DENIED IN PART.[1]

## I. BACKGROUND

**I. Factual Background**

Plaintiff Govindaswamy Nagarajan ("Plaintiff"), who was born in India but later became an American citizen, is a professor who has been employed by Defendant Tennessee State

---

[1] Plaintiff additionally filed a motion to continue the trial scheduled in this matter due to TSU's recent attempts to terminate Plaintiff's tenure. *See* DE 79. The District Judge then entered an order cancelling the scheduled trial date until further notice in light of the pending motion for summary judgment. *See* DE 80. For purposes of clarity and maintenance of the docket, Plaintiff's motion to continue the trial (DE 79) is hereby DENIED AS MOOT subject to refiling.

1

University ("TSU" or "Defendant") since 1980. The purported basis of the instant action is Defendant's disparate treatment of Plaintiff as evidenced through TSU's failure to adhere to its grade appeal policy. The policy requires students who wish to dispute an assigned grade to first contact the assigning professor within 30 days of the start of the ensuing semester. DE 75-4 at 1. If the issue is not resolved with the professor, the student may then file a written appeal to the head of the department before appealing to the dean of the subject college/school. *Id*.

In December of 2013, three students from Plaintiff's General Physics II Lab course met with Dr. Keith Hargrove ("Dean Hargrove"), who was at the time dean of the college of engineering, to lodge complaints about Plaintiff. DE 76-5 at 1. Dean Hargrove responded by emailing Dr. Sandra Scheick, chair of the department of mathematics and science, on December 9, 2013 to "suggest that [Plaintiff] be informed of these complaints[.]" *Id*. It is unclear whether such student complaints were provided to Plaintiff.

On December 15, 2013, Plaintiff assigned failing grades to the three complaining students but assigned "A" grades to every other student in the class. DE 73 at 6. The following day, Dean Hargrove emailed Dr. Scheick to advise her that he had received three written complaints from these students and that he planned to send a "response" to Plaintiff regarding the complaints. DE 76-7 at 1. There is no indication whether such a response was submitted to Plaintiff.

On December 18, 2013, one of the three students submitted a written complaint about Plaintiff to Dr. Mark Hardy, Vice President of Academic Affairs. DE 76-11 at 2-3. On December 26, 2013, a second student sent an email to Dr. Scheick that contained various complaints about Plaintiff's mistreatment throughout the semester. DE 76-9 at 1. On January 5, 2014, the third student sent a similar email to Dr. Scheick expressing concerns about Plaintiff's behavior in the classroom. DE 76-8 at 1. The email included a statement that, in accordance with

the grade appeal process, the student would attempt to discuss the matter directly with Plaintiff. *Id.*

On January 16, 2014, Dean Hargrove sent an email to the administrative assistant to Dr. Scheick that expressed his plan to assemble a committee of three faculty members to review the three students' "grade appeals," which ultimately consisted of Dr. Scheick, Dr. Geoffrey Burks, Dr. Jeanetta Jackson, and Dr. John Kelly. DE 76-12 at 1; DE 76-15 at 1. On January 17, 2014, Dean Hargrove sent a letter to Plaintiff expressing his concern about the "quality of instruction" provided by Plaintiff during the fall 2013 semester based on the complaints submitted by various students. DE 76-13 at 1. In light of the "grade appeals" undertaken by these students, Dean Hargrove requested that Plaintiff provide "grading information" to Dr. Scheick within five days for review by the committee. *Id.*[2]

On March 4, 2014, Plaintiff met with Dean Hargrove and Dr. Hardy regarding the student complaints and grade appeals, at which point Plaintiff made "claims of discrimination." DE 76-17 at 1. On March 26, 2014, Dr. Scheick wrote a letter to Dr. Hardy, on behalf of the faculty committee, indicating that Plaintiff had failed to provide any of the information requested in Dean Hargrove's January 17 letter despite "numerous requests for [] cooperation." DE 76-14 at 1. In a separate letter, dated April 4, 2014, Dr. Scheick recommended that each of the grades of the three students in Plaintiff's class be changed from an "F" to an "A." *Id.*; DE 76-15 at 1. The reasons provided for the grade changes ranged from an absence of evidence that any of the three students had cheated, as alleged by Plaintiff, to indications that Plaintiff had assigned failing grades to the

---

[2] Plaintiff claims that this letter was the first notice he received about any grade appeals from students. DE 73 at 7. However, two of the written complaints make clear that the students in question attempted to resolve grade disputes with Plaintiff directly but that Plaintiff was unreceptive and responded only by shouting and making threats. DE 76-9 at 2; DE 76-10 at 2-4.

three students without actually reviewing the exams on which the failing grades were based. DE 76-15 at 2-4.[3] Notably, Dr. Scheick's letter also recommended, purportedly on behalf of the committee, that Dean Hargrove and Dr. Hardy "consider the termination of [Plaintiff's] tenure for adequate cause" based on his potential violation of multiple Faculty Handbook provisions. *Id*. at 1.

On April 17, 2014, Dean Hargrove wrote a letter to Dr. Hardy in which he expressed his agreement with the committee's determination that the three students' grades should be changed. DE 76-16 at 1. Dean Hargrove additionally noted, however, that any recommendation for termination of Plaintiff's tenure would "require further review and assessment." *Id*.

On May 20, 2014, Plaintiff drafted a graphic letter to Dr. Hardy accusing TSU's administration of various wrongdoings that range from a malevolent conspiracy between "Caucasian racists" and "African-American racists" to the denial of his daughter's application to TSU. DE 76-1 at 8-18. The letter also describes Dean Hargrove and Dr. Scheick as "racist terrorists" who "trained" the three students at issue to "misbehave," and warns Dr. Hardy that "[t]he court will put an end to terrorism" if he is too "incompetent" to terminate these faculty members. *Id*. at 10, 17. Plaintiff further describes Dr. Scheick and Dean Hargrove, respectively, as "Lucifer Scheick and Lucifer Hargrove" before equating them to Boko Haram, then asks Dr. Hardy to relay to his three former students that although he would not seek legal action directly against them, "they will be compelled to testify and tell the truth." *Id*. at 14, 17. The letter additionally warns that "if [the students] lie[] at their depositions and trial, the court will not consider them as hostages but willing partners of Scheick and Hargrove." *Id*. at 17. After repeatedly invoking the name of Rosa Parks, Plaintiff concludes the letter by encouraging Dr. Hardy to "crush the smiling, venomous racists rogues at the bottom of your volcano." *Id*. at 18.

---

[3] Dr. Kelly later described Plaintiff's grading system as "inconsistent." DE 76-39 at 13.

On January 14, 2015, Dean Hargrove wrote a letter to Plaintiff advising him of the implementation of a faculty performance improvement plan ("PIP") for the spring 2015 semester that would require Plaintiff to attend three seminars intended to "improve [] classroom instruction." DE 76-18 at 1. The PIP also prohibited Plaintiff from teaching any classes during the semester. *Id*. Dean Hargrove testified that although he had previously implemented a PIP for a professor at a different university, he had never executed such a plan during his tenure at TSU. DE 76-2 at 100.

The following fall semester, Plaintiff was assigned to teach College Algebra I and to spend four hours per week tutoring students in the tutorial lab. DE 68-1 at 27-28; DE 76-47 at 1. Plaintiff claims, however, that his signature on the "final workload" form that memorialized his agreement to handle these duties was forged. DE 73 at 12. Defendant claims that Plaintiff refused to report to the tutorial lab at any point during the semester. DE 77 at 2.

In light of additional student complaints and Dean Lonnie Sharpe's "observations regarding [Plaintiff's] attitude about his classroom deficiencies" during the spring 2016 semester, Plaintiff was again subjected to a PIP during the fall 2016 semester. DE 68-3 at 2. Plaintiff again refused to perform any of the responsibilities assigned to him as part of the PIP, which included tutoring in the tutorial lab, completing "eLearn Training" and "Connect Training" programs designed to promote online availability of student resources and grades, and providing intermittent reports to Dean Sharpe regarding the progress of such training. *Id*. at 2-3. On October 22, 2017, Dean Sharpe wrote a letter to Dr. Hardy recommending the termination of Plaintiff's tenure based on a history of misconduct that included accusations of dishonesty, willful failure to discharge duties, and a lack of professionalism. *Id*. at 3-5.

**II. Procedural History**

Plaintiff commenced the instant action by filing a *pro se* complaint, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-5 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), in which he alleged that TSU and various faculty members were engaged in ongoing discrimination based on race, color, and national origin, and that TSU had retaliated against him for his prior protected activity of complaining about employment discrimination. In response to a motion for dismiss filed by the Defendants, the undersigned issued a report and recommendation recommending that the action be dismissed. *See* DE 22.

Shortly after the report and recommendation was issued, Plaintiff retained an attorney who filed objections to the report and recommendation and requested leave to file an amended complaint. *See* DE 26, 29. The District Judge ultimately entered an order granting the report and recommendation in part, which dismissed the individual faculty member defendants from the case and dismissed Plaintiff's claims for punitive damages. *See* DE 34. The District Judge denied the portion of the report and recommendation dismissing the claims against TSU, however, and permitted Plaintiff's Title VII and ADEA claims for declaratory relief and compensatory damages to proceed. *See id*. The order also permitted Plaintiff to file an amended complaint. *See id.*

Plaintiff's amended complaint again alleged that TSU had both discriminated against him on the basis of race, age, and national origin, and had retaliated against him based on his prior protected activity. *See* DE 35. Defendant responded by filing a motion for partial dismissal in which it asserted that Plaintiff's ADEA claims were barred by the doctrine of sovereign immunity. *See* DE 36. Plaintiff failed to respond to the motion and the undersigned thereafter issued a report and recommendation for dismissal of the ADEA claims. *See* DE 42. The District Judge

subsequently entered an order adopting the report and recommendation and dismissing Plaintiff's ADEA claims. *See* DE 45. Therefore, the only two remaining claims involve race/national origin discrimination and retaliatory conduct.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial," *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), but must also view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of any genuine factual dispute. *Anderson*, 477 U.S at 249-50. However, once the moving party has provided evidence sufficient to support a motion for summary judgment, the nonmoving party must present "significant probative evidence" to support the complaint. *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). A mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Under Title VII's anti-retaliation provision, an employer is prohibited from "discriminat[ing] against any of [its] employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

A claim brought under Title VII must be supported either by direct evidence of unlawful conduct or by circumstantial evidence that raises an inference of unlawful conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Direct evidence, if believed, requires no inferences to conclude that unlawful conduct was a motivating factor in the challenged action. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). If the plaintiff relies upon circumstantial evidence, the Court employs the burden shifting paradigm established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which requires the plaintiff to establish a *prima facie* case of unlawful conduct. If the plaintiff is successful in doing so, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged conduct. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant articulates such a reason, the presumption drops from the case and the plaintiff must show that the reason offered by the defendant is a pretext for unlawful conduct. *Id*. at 508. Regardless of which method of proof is utilized, the ultimate burden is on the plaintiff to show that he suffered unlawful conduct under Title VII. *Id*. at 518.

### B. Plaintiff's Claims

#### 1. Race/National Origin Discrimination

Plaintiff relies upon circumstantial evidence to support his claim and must therefore show the following to establish a *prima facie* case of racial discrimination: (1) that he was a member of a protected class; (2) that he was subject to an adverse employment action; (3) that he was qualified for the job; and (4) that for the same or similar conduct, he was treated differently from similarly situated non-minority employees. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 561 (6th Cir. 2004) (internal citations omitted).

Defendant concedes that Plaintiff meets the first and third prongs but argues that he is unable to satisfy the second and fourth prongs. Specifically, Defendant contends that Plaintiff cannot establish that he has been subject to an adverse employment action because he remains employed by TSU and continues to receive his full salary. Defendant similarly argues that Plaintiff cannot provide evidence that he was treated differently than similarly situated employees because there are no other TSU employees who, like Plaintiff, "collect a salary for doing nothing." DE 70 at 5.

An "adverse employment action" for purposes of a discrimination claim is defined as a "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Michigan Dept. of Corr.,* 165 F.3d 405, 410 (6th Cir. 1999)). The change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (internal citation omitted). A job reassignment that does not alter the employee's salary or work hours does not generally constitute an adverse employment action for purposes of a Title VII discrimination claim. *Id.* at 885.

Plaintiff's argument that he was subject to an adverse employment action is tenuous. Plaintiff points to TSU's decision to prevent him from teaching any physics classes, which is his area of expertise, and ultimately to relegate him to work in the tutorial lab. DE 73 at 15-16. Plaintiff argues that this has "significantly diminished" his responsibilities as a professor of physics (*id.* at 15), which in theory could establish the existence of an adverse employment action. *See Watson v. City of Cleveland*, 202 F. App'x 844, 854 (6th Cir. 2006) ("A materially adverse change might be indicated by … significantly diminished material responsibilities, or other indices that might be unique to a particular situation.") (internal citation omitted). However, Plaintiff identifies no case in which a court has ruled that an individual who remains employed while receiving a full salary despite blatantly refusing to perform duties assigned by a supervisor has experienced a materially adverse change in his employment. This is significant given that "[b]arring unusual circumstances … a transfer at no loss of title, pay, or benefits does not amount to … adverse employment action." *Darnell v. Campbell Cty. Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990), *aff'd*, 924 F.2d 1057 (6th Cir. 1991) (collecting cases).

Plaintiff additionally points to the implementation of two PIPs that were intended to "improve his effectiveness in the classroom" as evidence of adverse action. DE 68-3 at 2.[4] However, Plaintiff fails to explain how such measures impacted his employment in any meaningful way. *Cf. White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (noting that a negative performance evaluation can constitute adverse action if the plaintiff "point[s] to a tangible employment action that [he] alleges [he] suffered, or is in jeopardy of suffering, because of the downgraded evaluation") (quoting *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 789 (6th Cir. 2000)). Dean Hargrove testified that initiation of a PIP is not punitive (DE 76-2 at 102) and

---

[4] Neither party makes any effort to describe the details of these PIP initiatives.

there is no indication that the PIPs in question affected Plaintiff's salary or his status as a tenured professor. *Cf. Titus v. Verizon Wireless*, No. 3:10-cv-469, 2012 WL 4089898, at *7 (S.D. Ohio Sept. 17, 2012) (finding that the use of PIPs on the subject plaintiff represented adverse action because they "interfered with her opportunities for promotion and opportunities to earn higher wages").

Moreover, the Sixth Circuit has held that implementation of a PIP does not alone establish the existence of an adverse employment action. *See Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (noting that a PIP and an unfavorable performance rating were insufficient to demonstrate a materially adverse action) (citing *Caslin v. General Electric Co.*, 696 F.2d 45, 46 (6th Cir. 1982)). *See also Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) ("If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure."). Plaintiff also glosses over his continued refusal to adhere to the conditions of the PIP plans or report to his assigned duties in the tutorial lab (DE 77 at 2), behavior that has likely contributed to his continued absence from the classroom and suggests a level of petulance that does little to advance his argument of discrimination. *See Kocsis*, 97 F.3d at 886 (noting that "a semantic change in title and a bruised ego" were insufficient to establish adverse employment action where pay and benefits remained the same) (internal citation and quotations omitted). The Court thus accords little weight to Plaintiff's claim that his reputation "has been irreparably damaged." DE 73 at 13.

Nevertheless, a reasonable juror could potentially conclude that Plaintiff meets the "relatively low bar" for showing that he has been subject to an adverse employment action. *Applewhite v. FCA US LLC*, No. CV-17-11132, 2019 WL 6894229, at *6 (E.D. Mich. Dec. 18,

2019). The fact that Plaintiff remained employed at TSU at his regular salary does not necessarily demonstrate the absence of a genuine issue of material fact as to whether Plaintiff in fact suffered an adverse employment action. Because Plaintiff's removal from teaching any physics classes arguably demonstrates that he experienced "reductions in … job responsibilities," *Weigold v. ABC Appliance Co.*, 105 F. App'x 702, 708 (6th Cir. 2004), the Court finds that Plaintiff has made a threshold showing of a materially adverse action at this stage.

The fourth prong of the *prima facie* analysis, however, presents a larger obstacle to Plaintiff's claim as he must demonstrate that he was "similarly situated in all of the relevant respects to an employee of a different race who was treated better." *Johnson v. Ohio Dep't of Pub. Safety*, 942 F.3d 329, 331 (6th Cir. 2019) (internal citations omitted). The Sixth Circuit has delineated certain factors to consider as part of this determination that include whether the non-minority employees dealt with the same supervisor, whether they were subject to the same standards of employment, and, crucial to the instant matter, whether they engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992).

Plaintiff relies on the following facts to support his position: he is the only physics professor from India at TSU; he is the only physics professor who has been subject to a PIP; he is the only physics professor who has been relieved of his teaching assignments; he is the only physics professor who has been assigned exclusively to the tutorial lab; and he is the only physics professor who has been victimized by TSU's failure to adhere to its grade appeal procedures. DE 73 at 16. Yet absent from this argument is any identification of an employee at TSU who has engaged in the same conduct of which Plaintiff is accused. *See Hall v. State Farm Ins. Co.*, 18 F.

12

Supp. 2d 751, 767 (E.D. Mich. 1998) (noting that a plaintiff seeking to establish a *prima facie* case of racial discrimination must "identify other similarly situated non-minority employees who engaged in misconduct of comparable seriousness") (citing *Mitchell*, 964 F.2d at 582-83). The unrefuted evidence instead demonstrates allegations of wrongdoing committed solely by Plaintiff during his tenure at TSU. He received "many" complaints about his teaching that led to implementation of a PIP, which he simply ignored. DE 68-1 at 32; DE 68-3 at 2. Later, despite receiving a "fresh start" from Dean Sharpe in the spring of 2016, Plaintiff's conduct in the classroom continued to produce student complaints that led to implementation of a second PIP. DE 68-3 at 2. Plaintiff then proceeded to ignore Dean Sharpe's requests for periodic reports as part of the PIP and disregard his duties in the tutorial lab. He also failed to show students their grades in a timely fashion, refused without explanation to comply with Dean Sharpe's request that Plaintiff utilize an online platform ("eLearn") that would allow students to view their grades, and failed to adhere to the class syllabus that he presented to his students each semester. DE 68-1 at 34, 36.

In lieu of addressing this evidence or identifying another individual who engaged in similar behavior, Plaintiff simply lists the ethnicities of the five other professors in the physics department. DE 73 at 13.[5] But this only shows that TSU employed a relatively diverse field of physics

---

[5] The Court notes with interest that Plaintiff cites the deposition of Dean Hargrove as the source for his recitation of the ethnicities of the other professors in the physics department at TSU. DE 73 at 13. A review of the deposition transcript indicates that counsel for Plaintiff asked Dean Hargrove to identify the ethnicity of each physics professor listed on a "course schedule" that denotes the physics classes offered at TSU during the spring 2015 semester. DE 76-19 at 1-5. At one point during the exchange, counsel asks Dean Hargrove to identify the ethnicity of Dr. Moinuddin Sarkar, one of the listed professors, to which Dean Hargrove responds: "I'm not sure, but I believe [he is] of Indian descent, but I'm not sure about that." DE 76-2 at 105. While the Court is obviously in no position to evaluate the accuracy of Dean Hargrove's response or the background of the subject professor, the omission of this detail from Plaintiff's brief both raises a question as to whether his claim is brought in good faith and arguably lends credence to

13

professors, not that any non-Indian employees were treated better. Plaintiff points to no evidence suggesting that these other professors committed infractions of "comparable seriousness," which is his burden at this stage. *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1029 (6th Cir. 2010) (internal citation omitted). Plaintiff's argument instead requires the Court to assume that every other physics professor at TSU took part in the same activity, which "paints with far too broad a brush." *Mahar v. Meharry Med. Coll.*, No. 3:16-cv-2486, 2017 WL 6442144, at *10 (M.D. Tenn. Dec. 18, 2017).

A claimant does not satisfy the fourth prong of the racial discrimination analysis simply because he is a member of a protected group and has been subject to remedial action. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (noting that a claimant may obtain relief under Title VII even if he engages in misconduct "provided that [non-protected] employees who engage in the same conduct were either not disciplined or not disciplined as severely"); *Bryant v. Rolling Hills Hosp., LLC*, 836 F. Supp. 2d 591, 617 (M.D. Tenn. 2011) ("The plaintiff and the comparator must have engaged in acts of comparable seriousness.") (internal citation and quotations omitted); *Johnson-Romaker v. Kroger Ltd. P'ship One*, 609 F. Supp. 2d 719, 730-31 (N.D. Ohio 2009) (racial discrimination claim fails where plaintiff cannot proffer examples of employees who committed comparable violations but received less stringent discipline). When a plaintiff is unable to establish that similarly situated employees were treated differently, summary judgment is proper. *Cox v. Elec. Data Sys. Corp.*, 751 F. Supp. 680, 692 (E.D. Mich. 1990) (internal citations omitted). Because Plaintiff fails to identify a comparator, he cannot make out a *prima facie* case for racial discrimination and therefore no further analysis is required. Defendant is entitled to summary judgment on this claim.

---

Defendant's suggestion that the current action is simply the latest example of harassing litigation initiated by Plaintiff.

### 2. Retaliation

Like claims of racial discrimination, a Title VII retaliation claim that relies on circumstantial evidence is evaluated under the *McDonnell Douglas* framework. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010). The *prima facie* elements of a retaliation claim are similar but nonetheless distinct from those of a racial discrimination claim. To establish a *prima facie* case of retaliation, Plaintiff must demonstrate the following: (1) that he engaged in protected activity; (2) that the exercise of his protected rights was known to Defendant; (3) that he experienced an adverse employment action; and (4) that there was a causal connection between his protected activity and the adverse employment action. *Id*. With respect to the fourth prong, the Supreme Court has held that a retaliation claim "must be proved according to traditional principles of but-for causation," which requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013).

The Supreme Court has further distinguished a retaliation claim from a discrimination claim by holding that the plaintiff's burden in establishing a materially adverse employment claim is "less onerous in the retaliation context than in the anti-discrimination context." *Michael*, 496 F.3d 595-96 (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006)). A materially adverse action in the retaliation context includes "any action that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*.

Plaintiff incorrectly asserts that his retaliation claim survives summary judgment based solely on Defendant's failure to move for summary judgment on this claim. DE 73 at 16. Defendant does in fact allege that Plaintiff's retaliation claim fails, although the Court understands how the

15

cursory argument set forth in Defendant's brief was easily overlooked. Defendant's entire argument consists of the following:

> Plaintiff alleges retaliation for "having successfully filed a formal charge of discrimination." Plaintiff's "successful" charge was filed in 1990. Discovery has adduced no evidence of retaliation in the time period relevant to the current lawsuit.

DE 70 at 5.[6] It is true that the amended complaint contains a vague assertion of retaliation based on Plaintiff's "successfully filed [] formal charge of discrimination" (DE 35 at ¶ 13), which may or may not refer to a charge filed in 1990. However, Plaintiff additionally alleges retaliation in response to his complaints of discrimination made to Dr. Hardy and Dean Hargrove during a meeting on March 4, 2014, as well as his subsequent filing of a charge of discrimination with the Tennessee Human Rights Commission on September 22, 2014. DE 21-1 at 100; DE 76-17 at 1. Such actions would appear to constitute protected activity. *See Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1003 (S.D. Ohio 2002). Plaintiff also delineates an argument for his fulfillment of the remaining three prongs of the *prima facie* analysis, including Defendant's knowledge of the protected activity, the existence of adverse employment action, and an ostensible connection between the two. DE 73 at 18-19.

In contrast, Defendant fails to dispute the thrust of Plaintiff's argument in its reply brief, instead claiming broadly that Plaintiff's retaliation claim "cannot be shown to be linked to his EEOC charge, other than in Plaintiff's own mind." DE 77 at 3. Defendant asserts that its argument is "consistent with case law" (*id.*) but cites only an unpublished state court case that involves retaliatory discharge under the Tennessee Public Protection Act. *See Phillips v. Anderson County*, No. E200901883COAR3CV, 2010 WL 4514886 (Tenn. Ct. App. Nov. 10, 2010). Even assuming this retaliatory discharge case brought under state law has any bearing on the instant matter,

---

[6] The Court also notes that Defendant's brief previously claims, incorrectly, that Plaintiff's only claim is for race and national origin discrimination. DE 70 at 2.

16

Plaintiff correctly notes that relevant federal case law indicates that temporal proximity between protected activity and termination can be sufficient to establish a *prima facie* case of unlawful retaliation. *See Gliatta*, 211 F. Supp. 2d 992 at 1003-04 ("A causal link may be proven through evidence that an adverse employment action came right after the employee engaged in a protected activity."). Plaintiff at least arguably identifies action that could be viewed as both "adverse" under the less onerous retaliation standard and connected to protected activity, including implementation of a PIP that removed Plaintiff from the classroom shortly after his charge of discrimination filing in September of 2014. DE 73 at 18. Plaintiff has, therefore, met his "relatively light burden" of establishing *prima facie* retaliation. *Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 591-92 (6th Cir. 2006) (internal citation omitted).

The burden of production thus shifts to Defendant to provide a nondiscriminatory reason for the actions taken regarding Plaintiff, which, according to Plaintiff's brief, includes "misrepresent[ing] that the grade appeal committee recommended his tenure be terminated," placing him on PIPs, removing him from the classroom, assigning him to the tutorial lab, and "taking steps towards termination." DE 73 at 17. Defendant points to Dean Sharpe's letter to Dr. Hardy, dated October 22, 2017, which contains a litany of transgressions committed by Plaintiff. DE 68-3. The letter highlights "numerous" student complaints received over the course of several years, Plaintiff's blatant mistreatment of both students and colleagues, and his refusal to carry out responsibilities assigned to him by administrators. *Id.* at 2-5. Such reasons constitute nondiscriminatory reasons for many of the actions taken with respect to Plaintiff's employment.

However, the crux of Plaintiff's argument is that TSU failed to adhere to its own grade appeal policy in taking steps to terminate Plaintiff's tenure. Dean Hargrove's own notes indicate that Plaintiff raised claims of discrimination during a meeting on March 4, 2014 (DE 76-17 at 1)

17

Case 3:16-cv-00495   Document 81   Filed 03/04/20   Page 17 of 19 PageID #: 1674

and just one month later, the "grade appeal committee" consisting of Dr. Scheick, Dr. Burks, Dr. Kelly, and Dr. Jackson recommended that, in addition to changing grades for three students, Dean Hargrove "consider the termination of [Plaintiff's] tenure[.]" DE 76-15 at 1. Plaintiff points to the depositions of Drs. Burks, Kelly, and Jackson, all of whom confirmed that the committee never actually discussed the termination of Plaintiff's tenure at any point in time. DE 73 at 8-9; DE 75-29 at 10-13; DE 76-23 at 26-28; DE 76-29 at 11-12. A reasonable jury could conclude that the basis for this termination recommendation, which was cited in Dean Hargroves' letter documenting Plaintiff's misconduct (DE 68-3 at 3), was suspect and, as a corollary, that unlawful retaliation was actually the driving force behind this initial call for Plaintiff's termination. The Court therefore finds that Plaintiff has raised the appropriate questions of fact to meet his burden with respect to pretext and summary judgment is not appropriate at this juncture.

It is abundantly clear that Plaintiff's continued claims of various types of discrimination have become a source of frustration for TSU, so much so that Defendant's brief concludes by emphasizing the 20-year history of Plaintiff's largely unsuccessful litigation against the university. DE 70 at 5. However, it is axiomatic that Defendant must carry its burden by demonstrating the absence of any genuine factual dispute, *Anderson*, 477 U.S at 249-50, and may not simply point to previous lawsuits as evidence that Plaintiff's current claims are similarly frivolous. Neither of Defendant's briefs even reference the grade appeals process or Dr. Scheick's April 4, 2014 letter, which is a critical oversight that is not this Court's duty to rectify. *Mid-Century Ins. Co. v. Fish*, 749 F. Supp. 2d 657, 675 (W.D. Mich. 2010) ("[I]t is not the court's role to create and develop arguments for the parties, and the court will not do so here."). Simply put, Defendant has not made the requisite effort to establish the absence of any genuine issue as to these material facts. Because

18
Case 3:16-cv-00495   Document 81   Filed 03/04/20   Page 18 of 19 PageID #: 1675

Defendant's arguments with respect to Plaintiff's retaliation claim are woefully deficient, its motion for summary judgment is appropriately denied.

### III. RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that Defendant's motion for summary judgment (DE 69) be GRANTED IN PART and DENIED IN PART, specifically, that:

(1) Defendant's motion for summary judgment with respect to Plaintiff's claim for race/national origin discrimination under Title VII be GRANTED and that such claim be DISMISSED WITH PREJUDICE.

(2) Defendant's motion for summary judgment with respect to Plaintiff's claim for retaliation under Title VII be DENIED.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any response to the objections must be filed within fourteen (14) days after service of objections. Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

19

Case 3:16-cv-00495  Document 81  Filed 03/04/20  Page 19 of 19 PageID #: 1676